UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DANIEL J. B.,

                Plaintiff,

    v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

                Defendant.

Case No. 3:21-cv-01303-AR

**OPINION AND ORDER**

_____

**ARMISTEAD, Magistrate Judge**

      In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff Daniel J. B. (his last name omitted for privacy) argues that the Administrative Law Judge (ALJ) failed to provide specific, clear and convincing reasons for discounting his subjective symptom testimony and that, therefore, the ALJ's residual functional capacity (RFC) assessment was not supported by substantial evidence. (Pl.'s Br. at 4-6, ECF No. 13.) Plaintiff complains of chronic neck, shoulder, and back pain that radiates down his legs, requiring him to

Page 1 – OPINION AND ORDER

change positions frequently and that his symptoms are aggravated by most activities. As explained below, the court agrees with plaintiff that the ALJ erred in discussing his subjective symptom testimony. Accordingly, the court reverses the Commissioner's decision and remands this case for further proceedings consistent with this Opinion and Order.

## ALJ'S DECISION

On April 16, 2019, plaintiff applied for a period of disability and Disability Insurance Benefits (DIB) under Title II, alleging disability that began on January 23, 2019. (Tr. 136.) His claims, which were denied initially and upon reconsideration, were considered by the ALJ at a hearing on January 12, 2021. (Tr. 136.) In denying plaintiff's application, the ALJ followed the five-step sequential process.[1] The ALJ found that plaintiff met the insured status requirements through December 31, 2024, and at step one, that plaintiff had not engaged in substantial gainful activity since January 23, 2019, his alleged onset date. (Tr. 138.) At step two, the ALJ found that plaintiff has the severe impairments of lumbar degenerative disc disease with radiculopathy and obesity. (Tr. 138.) At step three, the ALJ determined that plaintiff does not have an impairment, or combination of impairments, that meet or medically equal a listed impairment. (Tr. 139.)

Particularly relevant to the court's review is the ALJ's assessment of plaintiff's RFC. 20 C.F.R. § 404.1545. The ALJ identified medical-record evidence when discussing plaintiff's symptoms, including a long history of back pain, with L5 radiculopathy and lumbar degenerative

---

[1] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. § 404.1520(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

Page 2 – OPINION AND ORDER

disc disease, and that plaintiff stopped working due to pain that radiates to his neck, shoulders, and legs. (Tr. 140.) Nevertheless, the ALJ found that plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence, his improvement with conservative treatment, and his reported activities. (Tr. 140.) The ALJ then determined that plaintiff has the residual functional capacity (RFC) to perform light work except that he is limited to occasional stooping. (Tr. 139.) The ALJ found that plaintiff is unable to perform any past relevant work at step four. (Tr. 142.) Given plaintiff's age, education, work experience, and RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as electronic accessories assembler, storage facility rental clerk, and deflective operator. (Tr. 142-43.)

## STANDARD OF REVIEW

The district court must affirm the ALJ's decision if the ALJ applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the ALJ's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

A. ***The ALJ Failed to Identify Specific, Clear and Convincing Reasons to Discount Plaintiff's Testimony***

To determine whether a claimant's testimony regarding subjective pain or symptoms is

Page 3 – OPINION AND ORDER

credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013).

In his January 2020 function report, plaintiff indicated difficulty with lifting, climbing stairs, bending, standing, kneeling, walking, squatting, sitting, and reaching. (Tr. 366.) Plaintiff also reported that he must change position frequently and that he needs to periodically lay down to alleviate pain. (Tr. 369.) Plaintiff stated that his chronic pain interferes with his concentration, and that he takes oxycodone three times a day. (Tr. 368.) Plaintiff described that his medication causes fogginess making it difficult to concentrate; physical activities increase his pain; he has difficulty sleeping; he can perform most aspects of personal care, with pain; he can make simple meals; and he can perform household chores in small increments. (Tr. 363-68.)

At the hearing, plaintiff testified that he stopped working on January 23, 2019, due to his worsening back pain. (Tr. 156-57.) Plaintiff testified that he has pain in his neck, shoulders, and back that radiates down his right leg. (Tr. 157.) Plaintiff also explained that he has been prescribed medication to cover the pain, and that acupuncture and chiropractic manipulation are beneficial, but provide only temporary relief, and that he wakes up in pain every day. (Tr. 158.) Plaintiff described that he is an elder at his church and that he participates in meeting three times a week online. (Tr. 159-60.) Plaintiff stated that he has strength to mow the lawn and lift things, but those activities cause pain for two days afterward. (Tr. 163.) Because sitting for too long is painful and causes stiffness, plaintiff testified, he could not perform sedentary work. (Tr. 164.) Plaintiff described that he needs to lie down for three quarters of the day twice a week. (Tr. 166.) Plaintiff also testified that he has lost approximately 50 pounds and that his weight loss has not alleviated his back pain. (Tr. 167.)

The ALJ's decision provides three reasons for discounting plaintiff's subjective symptom testimony:[2] (1) his level of activity was inconsistent with his allegations; (2) his conditions improved with conservative treatment; and (3) his allegations were inconsistent with the objective medical evidence. Plaintiff challenges the ALJ's assessment of his subjective symptom testimony, contending that the ALJ misinterpreted the objective evidence, that his activities are not inconsistent with his testimony, and that the chiropractic manipulative therapy, acupuncture, and massage therapy have not eliminated his pain. In plaintiff's view, the RFC fails to include all his limitations and, when his testimony is fully credited, the record establishes that he is disabled.

\ \ \ \ \

---

[2] There is no evidence of malingering.

*1.     daily activities*

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

The ALJ discounted plaintiff's subjective symptom testimony because he can prepare meals, perform household chores, drive a car, and go shopping. (Tr. 141, citing Tr. 363-65.) Here, the ALJ did not explain how plaintiff's ability to perform basic household chores undermines his testimony, leaving the court to guess. (Tr. 141.) The ALJ did not find that plaintiff spent a "substantial" portion of his day engaged in household chores or that these activities are transferrable to a work environment. *Ghanim*, 763 F.3d at 1165; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). Because the ALJ did not connect these activities to any symptom or the degree of any symptom alleged by plaintiff, this fails to provide a specific, clear and convincing basis upon

which to discount plaintiff's subjective symptom testimony. See *Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

The ALJ also discounted plaintiff's subjective symptom testimony based on his report of walking for four to five miles. (Tr. 140-41.) On December 10, 2019, plaintiff reported to Randall Evans, D.C., that he "has been increasing his walking and had walked 4-5 miles." (Tr. 140, citing Tr. 1094.) The ALJ also discussed a treatment note from December 17, 2019, in which plaintiff reported to Dr. Evans that "he had walked 4.5 miles two days prior," and that he "felt better than the last time he walked that far." (Tr. 141, citing Tr. 1098.) Plaintiff argues that the ALJ's findings are not supported by substantial evidence because he also reported increased pain with walking and his examinations showed tenderness to palpation and muscle spasms. (Pl. Reply at 4, citing Tr. 1094-96.) The court agrees with plaintiff here.

Although the ALJ accurately noted that plaintiff reported walking four to five miles on two occasions, he also reported increased pain due to this activity, which is consistent with his subjective allegations. For example, on December 10, 2019, plaintiff rated his pain at a seven on a 10-point scale, and Dr. Evans noted plaintiff had mild neck and upper back pain, with mild to moderate low back pain. (Tr. 1095.) And Dr. Evans' examination showed several tests were positive for low back pain, including straight-leg raise (SLR), squat and rise, Laguerre's test, and sacroiliac compression test. (Tr. 1095.) Dr. Evans' examination also noted segmental joint dysfunction on palpation at the L3-L5/S1 joints and pain with moderate muscle spasms. (Tr. 1095.) Dr. Evans further observed that plaintiff "appears to be in pain as [he] was guarded moving on and off the exam table." (Tr. 1095.)

Dr. Evans' treatment note from December 17, 2019, similarly shows mixed presentation. As the ALJ correctly noted, plaintiff reported walking 4.5 miles, and that he felt better than he did after his first attempt. (Tr. 1098.) However, plaintiff again rated his pain at a seven on a 10-point scale, with mild neck and upper back pain and mild to moderate low back pain. (Tr. 1099.) Dr. Evans' examination again showed several tests were positive for low back pain, including SLR, squat and rise, Laguerre's test, FABER test, and sacroiliac compression test, and found segmental joint dysfunction at the L3-L5/S1 joints and pain with moderate muscle spasms. (Tr. 1099.) Dr. Evans again observed that plaintiff appeared to be in pain transferring on and off the examination table. (Tr. 1099.) As plaintiff aptly highlights, there is no additional evidence in the record concerning how frequently plaintiff walked. Based on this limited evidence, the court concludes that the two instances of plaintiff walking four to five miles which increased his pain does not, on this record, amount to a specific, clear and convincing basis to reject plaintiff's subjective symptom testimony. See *Felicia F. P.*, 2023 WL 1991530, at *4 (concluding that ALJ erred in rejecting claimant's testimony because she could walk 1.3 miles four times a week).

    2.    *conservative treatment*

The ALJ discounted plaintiff's subjective symptom testimony based on his improvement with conservative treatment, including physical therapy, chiropractic manipulative therapy, and acupuncture. (Tr. 140.)  In assessing subjective symptom testimony, an ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" that includes "treat[ment] with an over-the-counter pain medication" may be sufficient to discount a claimant's allegations of disabling symptoms. *Parra*, 481 F.3d at 751. Yet "treatment that advances to stronger,

prescription medications" and includes other treatment modalities may not fairly be characterized as "conservative." See *Banford v. Kijakazi*, Case No. 2:21-cv-00785-EFB (SS), 2022 WL 4388390, at *4-5 (E.D. Cal. Sept. 22, 2022) (concluding ALJ erred in characterizing claimant's prescription medication, chiropractic treatment, physical therapy, and acupuncture as conservative) (collecting cases).

In the decision, the ALJ discussed that plaintiff has a long history of back pain, and that a January 19, 2019 lumbar MRI found an "L4-L5 moderate to severe right subarticular recess stenosis primarily affecting the traversing right L5 nerve root secondary to a right parasagittal disc protrusion." (Tr. 140, citing Tr. 594.) The ALJ discussed that treatment notes in February 2019 showed plaintiff had an antalgic gait with decreased weight-bearing on the right lower extremity, tenderness to the lumbar paraspinals, and decreased range of motion due to pain. (Tr. 140, citing Tr. 602.)

The ALJ acknowledged the objective evidence supporting plaintiff's allegations, but he characterized plaintiff's treatment as "conservative" and made findings about plaintiff's condition that he saw as normal or improved. The ALJ noted that plaintiff received physical therapy and reported decreased low back in February 2019 (Tr. 140, citing Tr. 755); received a right L4-5 epidural steroid injection in April 2019 and reported he was "modestly improved" (Tr. 140, citing Tr. 591); in September 2019, had an intact gait, full range of motion in the back, normal range of motion in his neck, without tenderness, palpable spasms, or pain (Tr. 140, citing Tr. 768); and, in October 2019, had a normal range of motion in his neck and no muscle tenderness on palpation (Tr. 140, citing Tr. 774). The ALJ also discussed that plaintiff received, chiropractic adjustments and acupuncture, and that the progress notes show improved cervical

range of motion and without pain (Tr. 140, citing 1081, 1088); had a normal gait, normal strength, and no lower extremity symptoms with seated leg raise (Tr. 140, citing Tr. 777, 783, 794); and that plaintiff reached "pre-injury" status in December 2019 (Tr. 140, citing 1081, 1088).

The court concludes that the ALJ's analysis here is flawed for two primary reasons. First, plaintiff's treatment cannot fairly be characterized as "conservative." In addition to the epidural steroid injections noted by the ALJ, plaintiff has been prescribed a variety of medications for his pain, including gabapentin, flexeril, percocet, oxycodone, lyrica, robaxin, and nortriplyine. (Tr. 746, 763, 782, 788, 791, 795.) After those treatments failed to relieve his pain, plaintiff sought physical therapy, chiropractic manipulation, and acupuncture. The ALJ offers no explanation for why he deemed these various treatment modalities as conservative for low back pain, and the rationale is unsupported by Ninth Circuit case law. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (holding ALJ erred in rejecting claimant's testimony based on receiving conservative treatment that included facet and epidural injections in back and neck and assorted prescription medications); *Garrison*, 759 F.3d at 1015 n.20 (stating that epidural shots in neck and back did not qualify as "conservative treatment"); *see also Banford*, 2022 WL 4388390, at *4 (concluding epidural and steroid injections, pain medications, chiropractic treatment, physical therapy, and acupuncture were not conservative treatment).

Second, the ALJ's findings are not supported by substantial evidence. For example, the ALJ noted that plaintiff reported to his physical therapist that his pain level was a two on a 10-point scale in February 2019. (Tr. 140, citing Tr. 755.) Contrary to the ALJ's finding, this statement is identified as a "short term goal." (Tr. 755.) Additionally, plaintiff described his pain

as a "fire" sensation along his right leg when he stands up, that his pain varies from a three to nine on a 10-point scale, and that his pain is aggravated by standing and walking. (Tr. 752.) Contrary to the ALJ's findings, plaintiff reported in March 2019 that he was "doing pretty poorly because of the pain." (Tr. 757.) In May 2019, plaintiff reported that the epidural steroid injection he received in April was "minimally helpful." (Tr. 768.) In November 2019, plaintiff was continuing to report that his pain was "constant" and interfered with most activities. (Tr. 786-87.) Although the ALJ correctly noted that in December 2019 plaintiff described that his lower back had reached "pre-injury status," that reference appears to relate to a minor motor vehicle accident he sustained in October 2019. (Tr. 1081, 1088.)

      The Commissioner argues that the ALJ's interpretation of the evidence is reasonable, and that plaintiff simply offers a different version. The court disagrees. The ALJ's analysis fails to link specific evidence to the supplied reasons and fails to account for plaintiff's waxing and waning pain symptoms. As described above, in December 2019, plaintiff's neck and cervical spine appeared to improve (*see* Tr. 1017 noting plaintiff reporting whiplash due to motor vehicle accident), yet he continued to report pain at a seven on a 10-point scale, with muscle spasms and joint dysfunction in his lumbar spine. (Tr. 1081, 1088, 1095, 1099.) The court concludes that ALJ's reasoning is not supported by substantial evidence and that his rationale fails to provide a clear and convincing basis for discounting plaintiff's testimony.

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

### 3. *inconsistency with medical record*

Inconsistency with medical evidence may provide a clear and convincing reason to discount a claimant's testimony, so long as it is not the only reason. *Trevizo*, 871 F.3d at 679. Because the ALJ has failed to provide other clear and convincing reasons sufficient to discount plaintiff's subjective symptom testimony about his limitations, a lack of objective medical evidence cannot supply the sole basis for discounting his testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

In summary, the ALJ's reasons for discounting plaintiff's subjective symptom testimony are not supported by substantial evidence and fail to provide specific, clear and convincing support for the ALJ's adverse determination. Accordingly, the ALJ has erred.

**B.   *Remedy***

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler*, 775 F.3d at 1101-02. A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record as a

whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

Remanding for further proceedings is the proper course here. The court concludes that the ALJ's evaluation of plaintiff's subjective symptom testimony is not supported by substantial evidence, viewing the entire record. The court also finds that the record contains conflicts and ambiguities, including the medical opinion evidence—unchallenged by plaintiff—from Clarence Ballard, M.D., and Susan Johnson, M.D., finding that plaintiff can perform light work. (Tr. 183-84, 200-01.) Additionally, the record indicates that an independent medical examination (IME) was due to be performed on December 6, 2019. (Tr. 1082, 1095.) If such an examination was completed, the results do not appear in the record and are not mentioned by plaintiff. In light of the conflicts between plaintiff's reports of pain and the medical evidence, physical capacity testing may be warranted on remand if the IME was not conducted, or if the results cannot be obtained. Therefore, remanding for further proceedings would serve a useful purpose. On remand, the ALJ must: (1) reassess plaintiff's subjective symptom testimony *de novo* and accept the limitations described therein or provide specific, clear and convincing reasons for their rejection; (2) obtain the results of the IME or undertake physical capacity testing, if warranted; and (3) conduct any further necessary proceedings to complete the record, including offering a new hearing with vocational expert testimony and making a step-five findings if required, and issue a new decision.

\\\\\

\\\\\

\\\\\

## CONCLUSION

For the above reasons, the Commissioner's final decision is REVERSED and REMANDED for further administrative proceedings.

DATED: March 17, 2023

_____
JEFFREY ARMISTEAD
United States Magistrate Judge